MURDOCK, Judge,
concurring in the result.
I concur in the result' reached by the main opinion. I write separately to address B.N.P.’s argument that Floyd v. Floyd, 701 So.2d 1151 (Ala.Civ.App.1997), stands for the proposition that “ ‘a matter of paternity does not have to be determined exclusively under the [Alabama Uniform Parentage Act].’ ” 701 So.2d at 1153. The main opinion distinguishes Floyd only on the ground that the issue of paternity was not raised in the divorce action in the present case. My disagreement with B.N.P.’s argument is more substantive.
The foregoing quotation is an accurate quotation from this court’s opinion in Floyd which, in turn, was quoting our earlier opinion in J.H.B. v. S.E.B., 668 So.2d 15, 17 (Ala.Civ.App.1994), cert. quashed, *511 668 So.2d 17 (Ala.1995).[2] Both J.H.B. and Floyd are properly read as standing for the proposition that the issue of paternity may be determined in a divorce action and that a separate or independent proceeding, as authorized under § 26-17-6, Ala.Code 1975, is not necessary. Neither J.H.B. nor Floyd, properly read, however, stands for the proposition that the substantive law established by the Alabama Uniform Parentage Act (“AUPA”) (including the presumptions established in § 26-17-5) and recognized in Ex parte Presse, 554 So.2d 406 (Ala.1989), and its progeny is not applicable where paternity is disputed within a divorce action. I see nothing in either case indicating that the substantive law of the AUPA would not apply merely because the issue of paternity is raised within a divorce action. Indeed, in J.H.B. the Court of Civil Appeals justified its conclusion that the alleged biological father’s paternity action should be allowed to proceed within the context of the divorce action by relying on the AUPA: “[Section] 26-17-9(a) of the AUPA provides that an action for paternity may be joined with an action for divorce.” 668 So.2d at 16.
The AUPA purports to, and as far as I can see does, govern disputes over paternity, whether raised in a divorce action or in an independent action. I see nothing in the AUPA or in our Supreme Court’s holding in Ex parte Presse (or in the holdings of its progeny) that states that the presumptions established by those authorities apply only in independent actions to establish paternity.
Foster v. Whitley, 564 So.2d 990 (Ala. Civ.App.1990), involved a petition to intervene in a divorce action. The petitioner sought to intervene for the purpose of claiming paternity of a child born during the marriage. Reversing the trial court’s judgment in favor of the intervenor, this court held that the AUPA superseded pri-or1 law regarding the right of a third party to establish his alleged paternity of a child who had been born to a married woman.
In Ex parte Anonymous, 472 So.2d 643 (Ala.1985), our Supreme Court quashed a writ of certiorari as having been improvidently granted. In a dissenting opinion that was subsequently embraced by the Supreme Court in Ex parte Presse, then Chief Justice Torbert addressed the impact of the AUPA on the right of a third party to bring a paternity action under Alabama’s Declaratory Judgment Act:
“It would be contradictory to say that even though the third party had no standing, he could still bring an action under the Declaratory Judgment Act, [Ala.] Code 1975, § 6-6-220 et seq. The Declaratory Judgment Act is a general statute authorizing certain actions and should not be held to preempt a specific body of law dealing with paternity.”
472 So.2d at 644 (Torbert, C.J., dissenting).
As this court explained in Hooten v. Hooten,, 754 So.2d 634 (Ala.Civ.App.1999), “[o]ur supreme court has held that no one, including the mother of the child,[3] has *512 standing to challenge a presumed father’s paternity as long as the presumed father persists in claiming paternity of the child.” 754 So.2d at 685 (citing Ex parte Presse and Ex parte C.A.P., 683 So.2d 1010 (Ala. 1996)) (emphasis added). In P.G. v. G.H., 857 So.2d 823 (Ala.Civ.App.2002), we stated:
“The Alabama Supreme Court stated in Ex parte Presse that the [A] UPA ‘espouses principles that seek to protect the sanctity of family relationships by providing a comprehensive statutory network through which a child may enforce its right of support against the presumed father.’ Ex parte Presse, 554 So.2d at 412 (emphasis added [in P.G.])....
[[Image here]]
“... The Presse Court also noted with approval the position that ‘ “the presumption that the husband of the mother of a child born during marriage is the father of that child—is often said to be one of the strongest presumptions known to the law.” ’ [Ex parte Presse, 554 So.2d at 413] (quoting Note, R. McG. & C.W. v. J.W. & W.W.: The Putative Father’s Right to Standing to Rebut the Marital Presumption of Paternity, 76 N.W.U.L.Rev. 669 (1981)). Finally, the Presse Court quoted at great length from the plurality opinion in Michael H. v. Gerald D., 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989). In light of G.H.’s evidentiary argument that he rebutted the presumption of J.G.’s paternity, we note the following portion of Michael H. quoted with approval by our Supreme Court in Ex parte Presse:
“ ‘ “[The biological father] asserts that requirements of procedural due process prevent the State from terminating his liberty interest in his relationship with his child without affording him an opportunity to demonstrate his paternity in an evidentiary hearing. We believe this claim derives from a fundamental misconception of the nature of the California statute. While § 621 is phrased in terms of a presumption, that rule of evidence is the implementation of a substantive rule of law. California declares it to be, except in limited circumstances, irrelevant for paternity purposes whether a child conceived during and born into an existing marriage was begotten by someone other than the husband and had a prior relationship with him. As the Court of Appeal phrased it:
“ ‘ “The conclusive presumption is actually a substantive rule of law based upon a determination by the Legislature as a matter of overriding social policy, that given a certain relationship between the husband and wife, the husband is to be held responsible for the child, and that the integrity of the family unit should not be impugned.” ’ [Michael H. v. Gerald D.,] 191 Cal.App.3d [995,] 1005, 236 Cal.Rptr. [810,] 816 [(1987) ], quoting Vincent B. v. Joan R., 126 Cal.App.3d [619], at 623, 179 CalRptr. [9], at 10 [(1981)].
“ ‘ “Of course the conclusive presumption not only expresses the State’s substantive policy but also furthers it, excluding inquiries into the child’s paternity that would be destructive of family integrity and privacy.” ’
“Ex parte Presse, 554 So.2d at 415 (quoting Michael H. v. Gerald D., 491 U.S. at 119-20, 109 S.Ct. 2333, 105 *513 L.Ed.2d 91) (emphasis omitted [in P.G.]).”
CRAWLEY and PITTMAN, JJ., concur.

. J.H.B. v. S.E.B. was a plurality opinion of this court. Also, in quashing the writ of cer-tiorari in Ex parte J.H.B., the Supreme Court stated that it did not wish to be understood as approving all of the language, reasons, or statements of law in the Court of Civil Appeals’ opinion. Ex parte J.H.B., 668 So.2d at 18.

. Aside from the presumed father (who persists in claiming paternity) the other two parties named in § 26-17-6(a), Ala.Code 1975, are the child and the child's mother. I see no difference in the treatment of those two parties by the statute. If the mother, as noted in Hooten, does not have standing to challenge a father’s paternity that is presumed under subdivisions (1), (2), or (3) of § 26-17-5(a), Ala. Code 1975, I do not see how the statute suggests any different treatment for the child; thus, the holding that “no one” has standing to challenge a presumed father’s paternity so *512 long as the presumed father persists in claiming that paternity under subdivisions (1), (2), or (3) of § 26-17-5(a) pertains to the child.